IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE ROGERS, | ) | Case No. 1:18-cv-728 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| BRIDGES REHAB. SERVS. LLC, | ) | |
| *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.     Introduction and Procedural Background

Plaintiff, Stephanie Rogers, sued[1] her former employer Bridges Rehabilitation Services, LLC and its owner Heather Keohane after she was terminated from her position as a Habilitation Specialist on January 13, 2017.  ECF Doc. 1.  Rogers' *pro se* complaint alleged that Bridges violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2) by: (1) denying her a pay increase in October 2016 on the basis of race or sex; and (2) terminating her (a) in retaliation for her whistleblower report to the Cuyahoga County Board of Developmental Disabilities ("CCBDD") of suspected client abuses, or (b) on the basis of race or sex.  ECF Doc. 1 at 3-5.  In remedies, Rogers asked for $52,000 compensatory damages for two years' unemployment and $26,000 in punitive damages for "willful violations."  ECF Doc. 1 at 6.

On July 5, 2018, the parties consented to magistrate judge jurisdiction, pursuant to 28 U.S.C. § 636(c).  ECF Doc. 10 at 2.  Thereafter, the court held a case management conference,

---

[1] The Equal Employment Opportunity Commission issued Rogers a "notice of suit rights" on January 4, 2018, and Rogers filed her complaint within 90 days – on March 30, 2018.  ECF Doc. 1; ECF Doc. 16-1.

setting a discovery deadline for July 10, 2019. ECF Doc. 18 at 2. On July 9, 2019, Rogers moved for a 60-day extension of discovery. ECF Doc. 23. The court denied Rogers' motion because she failed to comply with the courts order requiring parties to consult with opposing parties before seeking extension, she did not show good cause for extending discovery, and she was not diligent or cooperative in conducting discovery. ECF Doc. 25.

Bridges and Keohane now seek summary judgment under Federal Rule of Civil Procedure 56. ECF Doc. 26. Rogers opposes the defendants' motion and requests that summary judgment be granted in his favor. ECF Doc. 27. The court agrees that Rogers has not stated any claim against Keohane, has failed to produce sufficient evidence to create a genuine issue of material fact supporting her claims against Bridges, and the defendants are entitled to judgment as a matter of law on all of Rogers' claims. Accordingly, the defendants' motion for summary judgment (ECF Doc. 26) must be GRANTED, and Rogers' cross motion for summary judgment (ECF Doc. 27) must be DENIED..

## II. Facts

The following facts are undisputed and/or established by the Rule 56 evidence.

### A. Rogers' Employment and Termination

In October 2012, Rogers, an African American woman, began working for Bridges as a Habilitation Specialist, which involved working directly with Bridge's developmentally disabled clients. ECF Doc. 26-1 at 1; ECF Doc. 27-2 at 1. Rogers' work spanned several of Bridges' services, including their day program, "babysitting club," high-intensity program, and one-on-one services. ECF Doc. 26-7 at 21-22, 27, 29-30. For the majority of her tenure with Bridges, Rogers was an average worker, who consistently arrived on time, met expectations, and filled in for other employees when they called off or did not show up. ECF Doc. 26-1 at 1-2; ECF Doc.

26-7 at 32. On the other hand, Rogers testified that she regularly left the Bridges facility two or three times per day without clocking out. ECF Doc. 26-7 at 26, 33. Rogers explained that she volunteered to get lunch for "everybody," including staff and clients, and she never clocked out for lunch. ECF Doc. 26-7 at 27, 33.

When Rogers first began working at Bridges, she was paid $9.00 per hour, and she received a $1.00 wage increase after a 90-day probation period. ECF Doc. 26-7 at 22-23, 47. Bridges' payroll records show that Rogers earned a $12.00 per hour wage on pay stubs from January 15, 2015, through February 12, 2015, and a $12.50 per hour wage on pay stubs from February 29, 2015, through her termination. ECF Doc. 26-5 at 1-13; *see also* ECF Doc. 26-7 at 22-23.

The relationship between Rogers and her employer turned sour in late 2016 and early 2017. At that time, Rogers was disaffected with Bridges' management and began looking for work elsewhere. ECF Doc. 26-7 at 12-14, 32. She also told her co-workers and supervisors at L'Arche – another company where Rogers worked a night job – to pull their clients from Bridges, based on her belief that clients were abused at Bridges. ECF Doc. 26-7 at 36-38. During the same time, supervisors Nohely Gonzalez (Rogers' direct supervisor) and Kerry Sinclair issued Rogers three warning disciplinary notices. ECF Doc. 26-8 at 1-2; ECF Doc. 26-9; ECF Doc. 26-10; ECF Doc. 26-11. On December 7, 2016, Rogers was issued a written warning for taking unapproved absences on December 2, 5, and 7, 2016. ECF Doc. 26-8 at 1; ECF Doc. 26-9. On January 4, 2017, Rogers was issued a second written warning because she left work before her scheduled shift ended on December 6, 8, 9, 13, 14, and 23, 2016, and January 4, 2017. ECF Doc. 26-8 at 1; ECF Doc. 26-10. And on January 12, 2017, Rogers was

issued a "final warning" for arriving late on December 21, and 23, 2016, and January 3, 5, 6, and 12, 2017.  ECF Doc. 26-8 at 2; ECF Doc. 26-11.

In November 2016, Rogers filed a report with Ed Stazyk, manager of the major unusual incident unit at CCBDD.  ECF Doc. 1 at 5; ECF Doc. 26-7 at 14-16.  Rogers told Stazyk about her belief that Bridges had abused its clients, Stazyk told her to write it down on paper, and she gave Stazyk a written report of the suspected abuse.  ECF Doc. 26-7 at 14-15.  Rogers never delivered her report to anyone at Bridges, including Keohane, Scott Falkenstein, or any of the other supervisory or managerial staff.  ECF Doc. 26-7 at 14-15, 42-43.  Rogers testified that she did not think giving a report to anyone at Bridges was necessary because "everybody" at Bridges talked to each other about the alleged abuse "all day long."  ECF Doc. 26-7 at 42-43.

Rogers was terminated on January 13, 2017.  ECF Doc. 27-2 at 1.  Rogers testified that she had turned in her two-weeks' notice because she was about to start another job at a different home healthcare provider, and "[a]t the end of the day they came up with some bogus stuff and fired [her], terminated [her].  Just out of the blue.  Just made up some facts."  ECF Doc. 26-7 at 13-14 (explaining that she expected to work for those two weeks because her new employer needed time to run a background check before she could start).

At 2:00 pm, Rogers finished her session with a one-on-one client, and put the client on a bus home.  ECF Doc. 26-7 at 26-27.  At the same time, the Bridges facility where Rogers worked was in the middle of a shift-change, and Rogers believed the facility was within its mandatory acuity ratio.  Id.  Without clocking-out and without being told that she needed to buy sugar, Rogers left the facility to purchase sugar for the coffee club client activity that she ran at Bridges. ECF Doc. 26-7 at 29-31; ECF Doc. 26-8 at 2.  Rogers did not ask or tell any supervisors that she was leaving because she believed that all the supervisors were in a meeting at a different facility.

ECF Doc. 26-7 at 25-26; ECF Doc. 26-8 at 2.  Instead, Rogers told her co-worker, Troy Pass, that she left to buy sugar.  ECF Doc. 26-7 at 25-26.  During her outing, Rogers went to Family Dollar to buy sugar and to Giant Eagle to purchase pop because it was on sale.  ECF Doc. 26-7 at 44.  Rogers never submitted receipts for the items she purchased because, she said, Bridges did not reimburse employees for out-of-pocket expenses.  ECF Doc. 26-7 at 48.  While Rogers was gone, Gonzalez and Sinclair were unaware that Rogers had left the facility and spent time looking for her.  ECF Doc. 26-7 at 31; ECF Doc. 26-8 at 2.

Rogers returned to the Bridges facility 15 minutes before the end of her shift.  ECF Doc. 26-8 at 2.  At that time, Gonzalez and Sinclair called her to a meeting.  ECF Doc. 26-7 at 28-29; ECF Doc. 26-8 at 2-3.  Gonzalez and Sinclair asked where Rogers was, and Rogers told that that she had left to buy sugar.  ECF Doc. 26-8 at 2-3.  At that point, Gonzalez and Sinclair informed Rogers that she was being terminated for attendance issues.  ECF Doc. 26-7 at 28-29; ECF Doc. 26-8 at 2-3.  Sinclair gave Rogers a termination notice and told Rogers that she was going to call her own boss to discuss the matter.  ECF Doc. 26-7 at 8-9.

### B.    Keohane and Bridges

In April 2011, Keohane and another individual founded Bridges, which offered an array of services for adults with developmental disabilities.  ECF Doc. 26 at 1.  Due to the nature of Bridge's business, Bridges was required to maintain a particular staff-to-client ratio at all times (the acuity ratio).  ECF Doc. 26-1 at 2.  The failure to maintain the acuity ratio could result in Bridges not being paid for services or other sanctions by regulating authorities.  Id.

In her deposition, Rogers stated that she did "not see [Keohane] that much" when she worked at Bridges.  ECF Doc. 26-7 at 6.  Further, she testified that, because she had such little interaction with Keohane, she had "no way of knowing if [Keohane] personally retaliated [or

discriminated] against [her]." ECF Doc. 26-7 at 8-9.  Rogers said that she believed that Keohane made all the decisions in her company and hired people to let her know everything that happened.  ECF Doc. 26-7 at 6, 8.

### C.    Other Employees

In her complaint and deposition, Rogers identified three individuals whom she believed received grater pay for the same work: (1) Theodore Bellay, a Caucasian man; (2) Megan Friedman, a Caucasian woman; and (3) Andre Bailey, an African American man.  ECF Doc. 1 at 5 (identifying only Bellay); ECF Doc. 26-7 at 44-46; *see also* ECF Doc. 26-1 at 5.

Rogers testified that Bellay was a supervisor – in fact, her supervisor – for some time, but he was later demoted back to Habilitation Specialist.  ECF Doc. 26-7 at 28.  After his demotion, Rogers said that Bellay was paid $13 per hour, which was $0.50 more than she was earning. ECF Doc. 26-7 at 44.  In an affidavit, Keohane testified that Bellay was a "Team Lead" in March 2016 through October 2016, during which time he was a salaried employee making $30,000 per year.  ECF Doc. 26-1 at 5.  Employee payroll records from Bridges show that, from January 15, 2016 through March 15, 2016, Bellay's wage was $11.00 per hour.  ECF Doc. 26-3 at 1-2.  From March 31, 2016, through November 15, 2016, Bellay was salaried and paid $1,250 semi-monthly.  ECF Doc. 26-3 at 2-6.  From November 30, 2016, through March 31, 2017, Bellay was paid at a rate of $13.00 per hour.  ECF Doc. 26-3 at 6-8.

Friedman was a Habilitation Specialist who worked for Bridges from January through May 2015.  ECF Doc. 26-7 at 46; ECF Doc. 26-1 at 5.  Rogers testified that at the time Friedman began working for Bridges, Bridges had abandoned their 90-day probationary period and Friedman started out making $11.00 per hour.  ECF Doc. 26-7 at 46-47; *see also* ECF Doc. 26-1

at 5.  Bridges' employee payroll records show that from January 2015 through May 2015, Friedman was paid $11.00 per hour.  ECF Doc. 26-4.

Rogers testified that Bailey worked for Bridges for 6 months as a second-shift Habilitation Specialist.  ECF Doc. 26-7 at 45.  Rogers said that, at some point, Bailey asked for a raise and Bridges gave him a $2.00 wage raise.  ECF Doc. 26-7 at 45.  Rogers testified that she believed Bailey's $2.00 wage raise was pay discrimination because she did not also receive a wage raise.  ECF Doc. 26-7 at 45.  In her affidavit, Keohane testified that Bailey was employed as a Team Lead (supervisor) with Bridges in 2014, and that Rogers never worked in a Team Lead role during her employment with Bridges.  ECF Doc. 26-1 at 6.  To corroborate Keohane's testimony, the defendants submitted an April 9, 2014, email from Kathleen Rumancik (a Bridges employee) to an Ohio Department of Developmental Disabilities employee recounting an incident in which Bailey, acting as a direct supervisor, had directed an individual to clean a cafeteria and the individual was later found to be "absent without leave."  ECF Doc. 26-6 at 1.

### D.    CCBDD Investigation Report

On June 27, 2019, Bridges subpoenaed CCBDD to produce the final investigative reports for MUI# 2017-0180111 and MUI# 2017-0180112 – physical abuse investigations in which Rogers served as a witness.  ECF Doc. 26-15; ECF Doc. 26-16.  The investigation reports state that CCBDD investigators found Rogers not a credible witness in their investigations, because: (1) Rogers admitted to lying during a previous CCBDD investigation into whether Bridges staff provided adequate supervision for clients; (2) Rogers was "terminated by Bridges on 01-13-17 and the allegations in this MUI were first reported on 01-18-17;" (3) Rogers was upset during a 01-20-17 CCBDD interview and an unannounced visit and meeting with Stazyk and MUI Administrative Manager Bonnie Demopoulos on 01-23-17; (4) Rogers did not cooperate with

police; and (5) Rogers "threaten[ed] to get Bridges 'shut down.'" ECF Doc. 26-16 at 3-4, 7-8. Further, on February 10, 2017, Demopoulos sent an email to Falkenstein, noting that Rogers was banned from CCBDD property. ECF Doc. 26-2 at 3.

## III. Applicable Legal Standards

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The moving party must demonstrate "the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). The nonmoving party may not simply rely on her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted); *see also Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996) (The court does not have the responsibility to take the initiative on its own to search the record for genuine issues of fact). A reviewing court must determine whether the evidence that the nonmoving party relies upon "presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Nonetheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)

("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

### B.    Liberal Construction for Pro Se Pleadings

Court filings by *pro se* litigants are liberally construed and held to less stringent standards than filings by lawyers.  *El Bey v. Roop*, 500 F.3d 407, 413 (6th Cir. 2008).  Nevertheless, liberal construction for *pro se* litigants does not "abrogate basic pleading essentials."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Further, the court may not: (1) rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999); (2) construct the plaintiff's legal arguments for her, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993); (3) "conjure up [unpleaded] allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); or (4) create a claim for the plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that holding otherwise would "transform the district court . . . to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party").

### IV.    Analysis

### A.    Pay Rate Discrimination

In her complaint, Rogers alleges that Bridges denied her a pay increase in October 2016, but gave a pay increase to Rehabilitation Specialist Teddy Bellay – a "Caucasian male."  ECF Doc. 1 at 5.  She states that Manager Scott Falkenstein told her that Bellay was given a pay increase "because he did other duties."  *Id.*  Rogers alleges that she "finds [Falkenstein's reason] very questionable, and reeks of racial and gender discrimination."  *Id.*

The defendants argue that Rogers has not produced, and cannot produce, evidence supporting all the elements of a sex or race discrimination claim because she has not pointed to a

similarly situated employee of a different race and/or gender who was given a raise when she was not.  ECF Doc. 26 at 13-16; ECF Doc. 28 at 3-4.  Specifically, the defendants assert that Rogers has not shown that she was treated differently from a similarly situated person outside of her protected class because: (1) Bellay had been a salaried supervisor for 7 months in October 2016 and did not receive a pay raise at that time; (2) Megan (Friedman) was hired two years *after* Rogers and paid at a rate of $11 per hour while Rogers was making $12 per hour; and (3) Baily was a supervisor and worked for Bridges only for a couple months in 2014.[2]  ECF Doc. 26 at 14-16; ECF Doc. 28 at 3-4.  Rogers responds that Bridges' payroll records show that, from November 30, 2016 through January 2017, Bellay was a "Rehabilitation Specialist" and received a wage of $13 per hour, which was more than her $12.50 per hour wage for the same period.  ECF Doc. 27 at 6.

Title VII of the Civil Rights Act of 1964 precludes employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Similarly, the Equal Pay Act prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  29 U.S.C. § 206(d)(1).  Whether a wage-discrimination claim alleges unequal pay on the basis of race under Title VII or sex under Title VII or the Equal Pay Act, courts generally apply the same analytical framework.  *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) ("The analysis of a claim of unequal pay for equal work is essentially the same under both the Equal Pay Act

---

[2] Although Rogers' complaint does not allege that Bailey and Friedman were similarly situated comparators in her pay discrimination claim, her failure to name them in her complaint is not fatal.  *See Turner v. UPS*, No. 3:19-cv-476, 2019 U.S. Dist. LEXIS 178288, at *9 (M.D. Tenn., Oct. 15, 2019) (collecting cases for the proposition that a Title VII complaint need not identify specific comparators); ECF Doc. 1 at 5 (listing only Bellay as a comparator).

and Title VII.").  To establish a *prima facie* case of wage discrimination, a plaintiff must show that: (1) she was a member of a protected class; (2) an employee outside her protected class was paid more; (3) that employee performed equal work.  *Woods v. FacilitySource, LLC*, 640 F. App'x 478, 483 (6th Cir. 2016) (citing *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 881 (6th Cir. 2013), and *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (establishing that a *prima facie* case of discrimination requires plaintiffs to show (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position; and (4) a person from outside the protected class who was treated more favorably).  Equal work does not require identical jobs, but instead requires "jobs the performance of which require[] equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Warf*, 713 F.3d at 881 (quotation omitted).

After the plaintiff establishes her *prima facie* case, the difference between a Title VII claim and an Equal Pay Act claim emerges.  Under the Equal Pay Act, "the defendant must prove that the wage differential is justified under one of the four [statutory] affirmative defenses . . . : (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex."  *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (citing *Corning Glass Works*, 417 U.S. at 196) (noting that the defense must establish their reason "so clearly that no rational jury could have found to the contrary").  If the employer proves its affirmative defense, the plaintiff has a burden of *production* to demonstrate pretext.  *Boaz v. Fed. Express Corp.*, 107 F. Supp. 3d 861, 890 (W.D. Tenn., May 22, 2015) (citing *Buntin*, 134 F.3d at 799 n.7).  In contrast, a Title VII "defendant need only assert a legitimate nondiscriminatory reason for the different treatment afforded the

plaintiff as compared to her similarly-situated . . . co-workers." *Id.* at 799 n.6 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)). "Once the defendant meets this burden of production, the plaintiff must present evidence sufficient to support an inference of pretext in order to survive a defendant's motion for judgment as a matter of law." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

As an initial matter, Rogers' complaint is not entirely clear about whether she brings her pay discrimination claim under only Title VII or both Title VII and the Equal Pay Act. *See generally* ECF Doc. 1 at 5. The cover page to her complaint suggests that her claim invokes only Title VII. *See* ECF Doc. 1 at 3. Nevertheless, because the standards are generally the same and in an abundance of caution in light of Rogers' *pro se* status, the court will review Rogers' claim under both Title VII and the Equal Pay Act. *See Odomes*, 653 F.2d at 250; *El Bey*, 500 F.3d at 413. In any event, Rogers has not produced sufficient evidence that would allow a reasonable factfinder to determine that any of her proffered comparators from outside her protected class were paid more for equal work, as discussed below.

### 1.     Bailey

Rogers' claim that Bailey was paid more for equal work is untimely. The undisputed record evidence shows that Bailey worked for Bridges for 6 months in 2014. ECF Doc. 26-1 at 6; ECF Doc. 26-7 at 45. Although the exact last date of Bailey's employment does not appear in the record, Rogers testimony indicates that it did end at some point in 2014. ECF Doc. 26-7 at 45. Assuming that Bailey's last day was December 31, 2014, Rogers was required to file a complaint alleging her Title VII claims with: (1) the Ohio Civil Rights Commission ("OCRC") on or before June 30, 2015; and (2) the Equal Employment Opportunity Commission ("EEOC") on or before October 27, 2015. Ohio Rev. Code § 4112.05; 42 U.S.C. § 2000e-5(e)(1). And any

complaint under the Equal Pay Act must have been filed with the court on or before December 31, 2016. *See* 29 U.S.C. § 255(a) (providing a two-year statute of limitations for claims under the Equal Pay Act). Rogers' complaints to the OCRC and EEOC – filed after her January 13, 2017, termination – came well-past these deadlines. *See* ECF Doc. 15-1 at 2 (noting that Rogers first filed her claim to the OCRC in January 2017); ECF Doc. 16 (indicating that Rogers filed a complaint with the EEOC after her OCRC complaint and was issued a right to sue letter in January 2018). Thus, Rogers' claim alleging pay discrimination with regard to Bailey must be dismissed as time-barred.

Even if the court were to address Rogers' claim regarding Bailey, however, Rogers has not produced *any* evidence regarding Bailey's pay, much less sufficient evidence for a reasonable factfinder to conclude that he was paid *more* than she was for the same work. *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881. At most, the undisputed record evidence shows that Bailey received a $2.00 raise at some point during his 6-month tenure at Bridges in 2014. ECF Doc. 26-1 at 6; ECF Doc. 26-7 at 45. Moreover, Rogers' conclusory deposition statements that Bailey was also a habilitation specialist are insufficient to show that she and Bailey performed equal work, as: (1) Rogers has not produced any evidence showing that she actually had personal knowledge of Bailey's job duties or responsibilities; and (2) the undisputed record evidence shows that Bailey had supervisory or team-leadership responsibilities on top of any regular habilitation specialist duties he had. *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881; ECF Doc. 26-1 at 6; ECF Doc. 26-6 at 1; ECF Doc. 26-7 at 45. Accordingly, Rogers has not produced enough evidence to support a *prima facie* case of pay

discrimination with regard to Bailey.[3]  *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881.

### 2. Friedman

Similarly, Rogers has not produced or pointed to any evidence sufficient for a reasonable jury to conclude that Friedman was paid *more* for the same work.  *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881.  Here, the undisputed record evidence shows that Friedman made $11.00 per hour, whereas Rogers made $12.00 or $12.50 per hour, during all relevant periods.  ECF Doc. 26-4; ECF Doc. 26-5 at 1-13; ECF Doc. 26-7 at 22-23, 46-47.  This obviously won't meet Rogers' burden to produce evidence of discrimination *against* her.  Moreover, to the extent that Rogers' claims that Friedman was treated more favorably because Friedman was not subjected to a probationary pay period, Rogers has not shown that Friedman was a "similarly-situated" employee.  The undisputed record evidence shows that Rogers was hired in 2012, whereas Friedman was hired in 2015.  *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881; ECF Doc. 26-1 at 1, 5; ECF Doc. 26-7 at 1, 46.  During nearly three-year gap between Rogers' hiring and Friedman's hiring, Bridges was permitted to both revise its own policies regarding probationary pay periods and increase starting pay.  Thus, Rogers has not pointed to enough evidence to support a *prima facie* case of pay discrimination with regard to Friedman.  *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881.

---

[3] Even if the court were to construe from Rogers' claims about Bailey a claim alleging discrimination with regard to *pay raises*, Rogers' claim would likewise fail.  Here, Rogers has not alleged, or pointed to any evidence showing, that she also asked for but was denied a raise in 2014, or around the same time that Bailey asked for his raise.  *See generally* ECF Doc. 1; ECF Doc. 27; *cf. McMillian v. Potter*, 130 F. App'x 793, 797 (6th Cir. 2005) (indicating that a Title VII claimant attempting to show an "adverse employment action" must show a materially adverse change in termism or conditions of employment, such as seeking and being denied a raise or promotion).

### 3.      Bellay

Rogers also has not produced sufficient evidence from which a reasonable factfinder could conclude that Bridges paid Bellay more for equal work.  *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881.  Unlike the alleged comparators Bailey and Friedman, the undisputed record evidence shows that Bellay *was* paid more than Rogers from March 31, 2016 through March 31, 2017.  ECF Doc. 26-1 at 5; ECF Doc. 26-3; ECF Doc. 26-7 at 28, 44.  Nevertheless, Rogers has not shown that Bellay performed equal work, requiring equal skill, effort, and responsibility.  *Warf*, 713 F.3d at 881.  Here, the undisputed record evidence shows that Bellay was a salaried supervisor from March 31, 2016, through November 15, 2016, and that he was paid an hourly wage from November 30, 2016, through March 31, 2017.  ECF Doc. 1 at 5; ECF Doc. 26-3; ECF Doc. 26-7 at 28, 44.  Even if the court accepted Rogers' conclusory allegation that Bellay was demoted back to habilitation specialist as corroborated by his pay reduction and return to an hourly wage, Rogers has not pointed to any evidence: (1) showing that she had personal knowledge of Bellay's actual job responsibilities; or (2) overcoming Bridge's argument that Bellay's additional team lead responsibilities justified paying him more.  *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881; *see* ECF Doc. 1 at 5 (noting that Falkenstein told Rogers that Bellay was paid more because he had "other duties"); ECF Doc. 26-1 at 5 (noting that Bellay had "team lead" responsibilities); ECF Doc. 26-7 at 28 (noting that, for an unidentified period of time, Bellay was *Rogers*' *supervisor*).  Accordingly, Rogers has not produced sufficient evidence from which a reasonable factfinder could conclude that Bridges paid Bellay more than Rogers for the same work, or sufficient evidence to rebut Bridges' legitimate reason for paying Bellay more.  *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881.

Because Rogers has not produced sufficient evidence to support a *prima facie* claim of pay discrimination on the basis of sex or race, under Title VII or the Equal Pay Act, the defendants are entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250-52; *Woods*, 640 F. App'x at 483; *Warf*, 713 F.3d at 881. Moreover, the defendants are entitled to judgment as a matter of law on Rogers' claim alleging pay discrimination with regard to Bailey because that claim is untimely. Ohio Rev. Code § 4112.05; 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 255(a). Therefore, the defendants' motion for summary judgment (ECF Doc. 26) must be GRANTED, with respect to Rogers' pay discrimination claims.

**B.      Race Discrimination in Termination**

Liberally construed, Rogers' complaint alleges that Bridges terminated her based on her race. ECF Doc. 1 at 5. Specifically, Rogers asserts that, although Bridges said she was terminated for "attendance issues" after she went to the store to buy sugar for a client activity, "Caucasian employees . . . [were] not disciplined or terminated" for the same conduct. ECF Doc. 1 at 5.

The defendants argue that Rogers has not produced any evidence supporting her claim that she was terminated on the basis of race because she has not pointed to any other person in a similar position who was treated more favorably.[4] ECF Doc. 26 at 19; ECF Doc. 28 at 3-4. Further, the defendants contend that Rogers cannot show that their legitimate, nondiscriminatory and nonretaliatory reason for terminating bridges – unauthorized leave without clocking out –

---

[4] The defendants also argue that Rogers has not produced sufficient evidence to support a claim that she was terminated on the basis of sex. ECF Doc. 26 at 19. But Rogers' complaint does not allege sex discrimination with regard to her termination, or any facts from which the court could construe such a claim. *See generally* ECF Doc. 1. And this court will not conjure or create such allegations. *McDonald*, 610 F.2d at 19; *Clark*, 518 F.2d at 1169. Nevertheless, even if this court were to construct such a claim, Rogers has not shown that the defendants' legitimate reason for termination her was pretext for sex discrimination for the same reasons she has not shown it was pretext for race discrimination, as discussed in this section.

was pretext. ECF Doc. 26 at 17-18; ECF Doc. 28 at 2-4. They argue that Rogers was disciplined for attendance and unauthorized leave issues three times over the five weeks before her termination, and she admitted to that conduct. ECF Doc. 26 at 17-18; ECF Doc. 28 at 4. Moreover, they assert that Rogers was not asked to run an errand; the errand she claims to have been running was unnecessary; she did not actually complete the errand she said she was running; and such an errand would not have taken 45 minutes. ECF Doc. 26 at 18. Rogers responds that she never saw any disciplinary notices from Bridges. ECF Doc. 27 at 4.

As discussed above, Title VII precludes employers from terminating an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, "the well-established *McDonnell Douglas/Burdine* burden-shifting framework applies to claims of discrimination brought under Title VII . . . and Ohio Law." *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)); *see also McDonnel Douglas Corp.*, 411 U.S. at 802. First, the plaintiff must be able to establish a *prima facie* case of race discrimination by showing that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated . . . nonminority employees for the same or similar conduct." *McClain*, 440 F.3d at 332 (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)); *McDonnel Douglas Corp.*, 411 U.S. at 802. "[T]he burden [of production] then shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for [her] . . . termination." *McClain*, 440 F.3d at 332. If the employer meets this burden, the plaintiff must then show that the stated reasons were pretextual, *i.e.* that they "(1) had no basis in fact, (2) did not actually motivate the adverse action

taken against her, or (3) were insufficient to motivate the adverse action taken against her." *Id.* (quotation and alterations omitted).

As with her pay-discrimination claims, Rogers has not produced or pointed to sufficient evidence for a reasonable factfinder to conclude that Bridges terminated her based on her race. *Anderson*, 477 U.S. at 250-52; *McClain*, 440 F.3d at 332; *McDonnel Douglas Corp.*, 411 U.S. at 802. The court agrees with defendants that Rogers cannot meet her burden to establish the elements of a *prima facie* case of race discrimination because she has not produced or pointed to any evidence that a person outside of her protected class was treated more favorably than she. *Anderson*, 477 U.S. at 250-52; *McClain*, 440 F.3d at 332; *McDonnel Douglas Corp.*, 411 U.S. at 802. Also, even if Rogers could identify a more favorably treated non-African American employee, Rogers has not produced or pointed to any evidence that Bridge's reason for terminating her – being absent from work without permission or clocking out and after multiple disciplinary warnings regarding her attendance issues – was a mere pretext for race discrimination. ECF Doc. 26-7 at 8-9, 25-26, 28-31; ECF Doc. 26-8 at 2-3; ECF Doc. 26-9; ECF Doc. 26-10; ECF Doc. 26-11. Here, Rogers' conclusory allegations that she believes other, unidentified employees were not disciplined or terminated for attendance issues or leaving work without permission and that she did not receive some of the prior disciplinary notices are insufficient to meet her burden under the *McDonnell Douglas/Burdine* test. *Anderson*, 477 U.S. at 250-52; *Alexander*, 576 F.3d at 560; *McClain*, 440 F.3d at 332; *McDonnel Douglas Corp.*, 411 U.S. at 802; ECF Doc. 1 at 5; ECF Doc. 27. Further, that Rogers claimed to have a good, business-related reason to leave the Bridges' facility (buying sugar for her clients' coffee club), does not mean that she could not be terminated for failing clock out or for failing to inform – or at least leave a note for – a supervisor, explaining her purpose for leaving the facility. ECF Doc.

26-7 at 25-26, 2-31, 44.  Moreover, Rogers' own testimony that she had handed in her two-weeks' notice earlier that day and that she believed "attendance issues" were a "bogus" reason to fire her based on her two-weeks' notice undercuts any claim that her termination was based on her race.  ECF Doc. 26-7 at 12-14, 32.

Because Rogers has not produced or pointed to any evidence sufficient to meet her burden under the *McDonnell Douglas/Burdine* test, the defendants are entitled to judgment as a matter of law.  *Anderson*, 477 U.S. at 250-52; *McClain*, 440 F.3d at 332; *McDonnel Douglas Corp.*, 411 U.S. at 802.  According, the defendants' motion for summary judgment (ECF Doc. 26) will be GRANTED, with respect to Rogers' claim alleging that she was terminated based on race.

### C. Whistleblower Retaliation

Rogers' complaint alleges that Bridges terminated her in retaliation for reporting suspected client abuses to the CCBDD.  ECF Doc. 1 at 5.  She asserts that Bridges' purported reason for terminating her was pretext for whistleblower retaliation because she had met with CCBDD personnel in November and December 2016 to report the suspected abuse.  ECF Doc. 1 at 5.

The defendants argue that Rogers failed to bring her whistleblower claim within the 180-day limitations period and has not produced any evidence supporting her arguments that she was terminated in retaliation for being a whistleblower.  ECF Doc. 26 at 10-13, 19; ECF Doc. 28 at 3-4.  Specifically, they assert that Rogers has not shown: (1) that she satisfied the requirements of Ohio's whistleblower statute (including the applicable statute of limitations); or (2) that there was a causal link between any protected activity and Rogers' termination.  ECF Doc. 26 at 10-12, 19; ECF Doc. 28 at 3-4.  Further, as with Rogers' race-discrimination claim, the defendants

contend that Rogers cannot show that their reason for terminating her was pretextual. ECF Doc. 26 at 17-18; ECF Doc. 28 at 2-4. Rogers responds that she "believes there is a causal link between her complaints of abuse to the CCBDD and her termination of employment." ECF Doc. 27 at 6.

Ohio's whistleblower statute provides a statutory cause of action for employees to bring against an employer who discharged or disciplined them in retaliation for engaging in whistleblowing activities protected under the statute. *Lee v. Vill. of Cardington*, 33 N.E.3d 12, 15 (Ohio 2014); Ohio Rev. Code § 4113.52(D) ("[T]he employee may bring a civil action for appropriate injunctive relief or for the remedies set forth in division (E) of this section, or both."). "In the context of a motion for summary judgment, the presentments required in a whistleblower case are no different than those in any other retaliatory discharge suit." *Wood v. Dorcas*, 757 N.E.2d 17, 23 (Ohio App. Ct. 2001). "The plaintiff must first make a prima facie case by showing that (1) he or she engaged in activity which would bring him or her under the protection of the statute, (2) was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment actin." *Id.* (citing *Chandler v. Empire Chemical*, 650 N.E.2d 960 (Ohio App. Ct. 1994), and *Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986)). "When the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the action taken," and then the plaintiff must show that the employer's stated reason was a pretext for retaliation. *Id.* at 24. Further, the plaintiff must have brought her claim with 180 days of the alleged retaliatory action. Ohio Rev. Code § 4113.52(D); *see also Davidson v. BP Am., Inc.*, 709 N.E.2d 510, 517 (Ohio App. Ct. 1997).

To avail herself of protection under Ohio's whistleblower statute, an employee must strictly comply with the statute's requirements. *Lee*, 33 N.E.3d at 15 (citing *Contreras v. Ferro Corp.*, 652 N.E.2d 940 (1995)). First, the employee must have "become[] aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision," which: (1) the "employer has authority to correct" and (2) the "employee reasonably believes is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution." *Id.* (quotations omitted). For such a belief to be reasonable, the employee must "make a reasonable and good faith effort to determine the accuracy of any information." Ohio Rev. Code § 4113.52(D). Second, the employee must follow the strict steps for reporting the information by: (1) "orally report[ing] the violation to his or her supervisor or other responsible officer;" (2) "'subsequently fil[ing] with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation;'" and (3), "[i]f the employer does not correct or make a good faith effort to correct the violation within 24 hours, the employee may then notify outside authorities" such as the regulatory authority over the employer's industry. *Id.* (citing Ohio Rev. Code § 4113.52(A)(1)(a)).

Rogers cannot show that she qualifies for protection under Ohio's whistleblower protection statute because the undisputed record evidence shows that she did not comply with the statute's reporting requirements. *Anderson*, 477 U.S. at 250-52; *Lee*, 33 N.E.3d at 15; *Wood*, 757 N.E.2d at 23. Rogers' own deposition testimony establishes that she did not comply with Ohio's whistleblower statute when she failed to report her abuse allegations to a supervisor, orally and in writing, before she reported the alleged abuse to CCBDD. *Lee*, 33 N.E.3d at 15; Ohio Rev. Code § 4113.52(A)(1)(a); ECF Doc. 26-7 at 14-15, 42-43. That Rogers told her

supervisor at a different company is irrelevant, because Rogers' other employer would not have had any authority to end any alleged abuse at a Bridges' facility. *Cf. Lee*, 33 N.E.3d at 15; ECF Doc. 26-7 at 36-38. Further, Rogers has not pointed to any evidence that she made a good faith effort to determine the accuracy of any alleged abuse, but merely accepted allegations and workplace rumors at face value. Ohio Rev. Code § 4113.52(D); ECF Doc. 26-7 at 42-43. Moreover, as discussed with regard to Rogers' race-discrimination claim, Rogers has not produced or pointed to any evidence sufficient for a reasonable factfinder to conclude that she has met her burden to show that Bridges' reason for terminating her – attendance issues – was a pretext for whistleblower retaliation. *Lee*, 33 N.E.3d at 15; *Chandler*, 650 N.E.2d 960; *Cooper*, 795 F.2d at 1272; *see* Section IV.C., *supra*. Thus, the defendants are entitled to judgment as a matter of law on Rogers' whistleblower retaliation claim, and their motion for summary judgment (ECF Doc. 26) must be GRANTED.

### D.    Claims Against Heather Keohane

The defendants argue that Rogers' complaint should be dismissed because it does not state any claim against Keohane. ECF Doc. 26 at 19. Further, the defendants assert that, even if the claims in Rogers' complaint could be construed to state a claim against Keohane, Keohane cannot be held personally liable because Rogers has not produced any evidence that Bridges or Keohane personally engaged in discriminatory or retaliatory conduct. ECF Doc. 26 at 19-20. Finally, the defendants contend that Rogers' failure to address this issue in her response brief "makes it clear that she has abandoned her claims against Keohane." ECF Doc. 28 at 4.

After the pleadings have closed, a defendant may move for judgment on the pleadings under Rule 12(c) on the basis that a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c); *cf. Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66

(6th Cir. 2017) (stating that a Rule 12(c) motion is reviewed under the same standard as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)). To survive such a motion, the complaint must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true are sufficient to raise a right to relief above the speculative level." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation marks omitted (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-[pleaded] factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

Rogers' complaint states that Keohane was the owner of Bridges. ECF Doc. 1 at 2. It makes no other allegations against Keohane. *See generally* ECF Doc. 1. Even construing Rogers' complaint in a light most favorable to her, Rogers has failed to state any claim against Keohane upon which relief can be granted. *Commercial Money Ctr., Inc.*, 508 F.3d at 336; Fed. R. Civ. P. 12(c). Thus, Keohane is entitled to judgment as a matter of law, and the defendants' motion for summary judgment (ECF Doc. 26) will be GRANTED.

## V.     Summary and Conclusion

Rogers has not produced evidence sufficient to support her claims; she has not stated a claim against Keohane, and the defendants are entitled to judgment as a matter of law on each of Rogers' claims. Accordingly, the defendants' motion for summary judgment (ECF Doc. 26) is GRANTED. Rogers cross-motion for summary judgment (ECF Doc. 27) is DENIED.

**IT IS SO ORDERED.**

Dated: November 5, 2019

Thomas M. Parker
United States Magistrate Judge